```
                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA
                              --oOo--

UNITED STATES OF AMERICA,     ) Docket No. 17-MJ-00058-EFB-1
                              )
                              ) Sacramento, California
                  Plaintiff,  ) March 31, 2017
                              ) 2:08 p.m.
           v.                 )
                              )
GARY HUNT,                    ) Re: Initial Appearance
                              )
                  Defendant.  )


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE EDMUND F. BRENNAN
                   UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:       HON. PHILLIP A. TALBERT
                         United States Attorney by
                         MR. HEIKO PHILIPP COPPOLA
                         Assistant U.S. Attorney
                         501 I Street, Suite 10-100

For the Defendant:       OFFICE OF THE FEDERAL DEFENDER by
                         MR. DOUGLAS J. BEEVERS
                         801 I Street, Third Floor
                         Sacramento, CA 95814

Court Recorder:          JONATHAN ANDERSON
                         U.S. District Court
                         501 I Street, Suite 8-100
                         Sacramento, CA 95814
                         (916)930-4072


Transcribed by:          JENNIFER COULTHARD, RMR, CRR
                         Official Court Reporter
                         501 I Street, Suite 14-243
                         Sacramento, CA 95814
                         (312)617-9858
                         Jenrmrcrr2@gmail.com
```

Proceedings recorded by electronic sound recording; transcript produced by official court reporter.

1           SACRAMENTO, CALIFORNIA, FRIDAY, MARCH 31, 2017

2                              --oOo--

3           (The following proceedings were had in open court.)

4           THE CLERK:  Calling magistrate case 17-0058-EFB,

5    *United States v. Gary Hunt*.  Your Honor, we're on calendar

6    today for defendant's initial's appearance.

7           MR. COPPOLA:  Good morning, your Honor; Heiko Coppola,

8    on behalf of the United States.

9           THE COURT:  Good morning, Mr. Coppola.

10          MR. BEEVERS:  Good morning, your Honor; Doug Beevers,

11   from the Federal Public Defender's Office.

12          The accused, Mr. Hunt, has asked that our office be

13   appointed.  I've reviewed his financial affidavit.  He is, at

14   present, unable to obtain counsel financially probably not for

15   a long time but at least for today.  I'd ask that our office be

16   appointed while he is facing incarceration, which is the

17   standard.

18          THE COURT:  All right.  Good afternoon, Mr. Beevers.

19          MR. BEEVERS:  Thank you.

20          THE COURT:  This is actually -- the arrest was

21   pursuant to a civil contempt proceeding.  It's not clear to me

22   that there is a right to appointed counsel in a civil contempt

23   proceeding, but because the defendant is in custody, I'm going

24   to exercise the Court's discretion to appoint counsel.

25          MR. BEEVERS:  Thank you, your Honor.

1           THE COURT:  And I appreciate your information that
2    you've provided as to the defendant's financial inability to
3    retain counsel.
4           All right.  Mr. Hunt, you're here because a warrant
5    for your arrest was issued by the District of Oregon based upon
6    your failure to appear for a contempt hearing on March 10,
7    2017.  The purpose of that hearing was to determine whether you
8    should be sanctioned and incarcerated until such time as you
9    comply with the Court's earlier orders.  When you failed to
10   appear, that Court entered the arrest warrant.
11          All right.  Mr. Beevers, does the defendant -- well,
12   it's not clear to me that Rule 5 does apply to this proceeding,
13   but to the extent that it does --
14          MR. BEEVERS:  If it did --
15          THE COURT:  -- does this defendant contest identity?
16          MR. BEEVERS:  He's not contesting that he's the Gary
17   Hunt they're looking for.
18          THE COURT:  All right.  So you waive an identity
19   hearing then?
20          MR. BEEVERS:  Right.
21          THE COURT:  All right.  Now, as to custody, is the
22   government moving for detention pending the proceedings up in
23   Oregon?
24          MR. COPPOLA:  Yes, your Honor, we are, and we're
25   asking that he be removed to the District of Oregon forthwith.

1    THE COURT: All right. Mr. Beevers, do you wish to be
2  heard on detention?
3    MR. BEEVERS: Yes, your Honor, but first, could we
4  address the shackling issue? He's shackled as a civil
5  contempt based on not showing for violating a protective order.
6  That seems pretty far from any kind of danger. The risk -- and
7  the only risk in the case -- he's not a party to the case, he's
8  not involved in the case. It seems that he's --
9    THE COURT: Yeah. To the extent that there are danger
10 issues, it really is one of whether there has been witness
11 intimidation and whether the identity of confidential
12 informants has been disclosed.
13   MR. BEEVERS: Right.
14   THE COURT: I don't think that there's any allegation
15 that the defendant's a danger for purposes of the proceedings
16 here in the courtroom.
17   Mr. Heiko, do you have any information in that regard?
18   MR. COPPOLA: No, your Honor, I don't, at least with
19 respect to anything in the courtroom.
20   THE COURT: All right. Then I'll order the
21 defendant's shackling code to be legs only for proceedings here
22 in this district.
23   MR. BEEVERS: Thank you, your Honor.
24   THE COURT: All right. So if we need to unshackle his
25 hands, let's do that.

1            All right.  Now, as to the matter of detention,
2    Mr. Beevers?
3            MR. BEEVERS:  Yes, your Honor.  I'd ask that the
4    defendant be released.  He has agreed to post bail even or to
5    promise to appear in the district.  The issue is that he's
6    accused of violating a protective order, which would be
7    analogous to an injunction that's sort of collateral to the
8    criminal case.
9            The interesting issue is does the District Court in
10   Oregon have the authority to issue an injunction to a nonparty
11   who's not in the district, and there could be -- normally that
12   would be subject to a long-arm statute and due process
13   analysis, whether there's minimum contacts with the forum
14   state.  And there's Constitutional issues that he wanted to
15   raise in regard to that order.  And voluntarily appearing in
16   the district to contest it is normally seen as a waiver of
17   jurisdiction.
18           So there appears to be some legal reasons why he was
19   concerned about the forum of the order to show cause.  He's
20   advised he's not concerned about this forum of a warrant.  In
21   order to appear on a warrant, the Court has clear jurisdiction
22   anywhere in the country, whether it's a material witness
23   warrant, a codefendant warrant, any of those kind of warrants
24   are clear.  And he recognizes the Court has the ability to
25   order him to appear, this Court.  He has no dispute with this

1   Court and this district ordering him present, to appear
2   anywhere.  That's -- that's a completely unrelated issue.  It
3   would enable him to preserve his objection, his due process
4   objection that that protective order should have been issued by
5   this district for a resident of this district.  I'm not that up
6   on the Constitutional issues, but it does seem at least it's an
7   arguable case.
8           In the pleadings, the government argued their
9   position.  I'm not sure if it's right or not, but it has
10  nothing to do with whether or not a court in the state where he
11  lives can order him to do something.  That's clearly nothing
12  he's ever objected to.  And he would accept that Court's order
13  and even post bond if the Court required it.  He has -- he does
14  own real estate, and he could post a lien on his property that
15  would be -- he's lived there for 14 years, lived in the
16  district for a long, long time and no written record for a
17  long, long time.
18          THE COURT:  Mr. Coppola?
19          MR. COPPOLA:  Your Honor, this defendant has had more
20  than enough opportunities to appear and state his case before
21  the District Court of Oregon.  This started with a letter from
22  the U.S. Attorney's Office asking that he cease and desist.  It
23  evolved into an order from the Court asking that he cease and
24  desist and then subsequently -- which he ignored.  Then we have
25  an order to show cause, which he refused to comply with, which

1  led to him not only failing to appear, his willful failure to
2  appear, but then the bench warrant.  I don't think at this
3  point this Court could be satisfied that he would actually
4  voluntarily appear in the District of Oregon, given -- given
5  his intransigence.
6        THE COURT:  That really is the rub of the problem,
7  Mr. Beevers.  The district judge up in Oregon has given the
8  defendant every possible accommodation.
9        MR. HUNT:  Your Honor, may I speak, please.
10       THE COURT:  No.  You need to speak through your
11 attorney.
12       MR. BEEVERS:  Let him finish his instruction.
13       THE COURT:  I'll give you a moment to speak to your
14 attorney, Mr. Hunt.
15    (Off-the-record discussion.)
16       MR. HUNT:  I would ask if he could explain.
17       MR. BEEVERS:  Let him finish what he's saying first.
18       THE COURT:  All right.  This is my concern,
19 Mr. Beevers and Mr. Hunt:  The defendant was -- Mr. Hunt was
20 personally served with the order.
21       At the time that he was served, he stated that he
22 refused to accept service of the order.  He stated that he did
23 not recognize the authority or the jurisdiction of the District
24 Court in Oregon, and he was provided an order that even gave
25 him the option to phone it in.  He could have picked up the

1    phone and called and made the appearance by telephone, but he
2    didn't do that either.
3           It's clear to me that he made a deliberate choice to
4    defy the order and not appear there.
5           If he's not detained, then I put the court in Oregon
6    as well as this court in the position of having to do this all
7    over again.
8           There's every expectation that if a new hearing is set
9    and he's ordered to appear, the same thing is going to happen
10   again.  A new arrest warrant will have to issue, and the
11   defendant will have to then be arrested and brought back into
12   this court again, and we're starting from scratch.  That
13   doesn't make any sense.
14          MR. BEEVERS:  Well, your Honor, I guess the issue is
15   if he's viewing it as a civil case.  In a civil case a service
16   of a complaint, if the person who gets the complaint cannot
17   appear, then default judgment is entered and then litigate it
18   when they enforce the complaint.  So that's -- that is a valid
19   civil tactic.  It's not the same as just refusing to show up
20   for a subpoena or something.
21          Now we have a situation where this Court, that has
22   absolute personal jurisdiction over him, would order him to do
23   something and subject to fines or criminal contempt if he
24   doesn't.  I mean, he's -- this Court has the authority to order
25   him to show up there, and he recognized that, and he would put

1   up -- put up money.  I would ask him to explain whether I
2   misunderstood anything, if I could call him.
3           THE COURT:  All right.  But I assume you've gone over
4   with Mr. Hunt the prospect that -- and this is also set out in
5   the government's papers that were filed up in Oregon on the
6   motion.  There's every potential that this case could evolve
7   from a civil contempt proceeding into a criminal contempt
8   proceeding.
9           MR. BEEVERS:  Yes, your Honor.
10          THE COURT:  Have you discussed with the defendant his
11  Fifth Amendment rights against self-incrimination?
12          MR. BEEVERS:  Yes, your Honor.
13          THE COURT:  All right.  Mr. Hunt, I'll allow you to
14  speak, but I want to tell you that anything that you say in
15  these proceedings could be later used against you.  Do you
16  understand that?
17          MR. HUNT:  Yes.
18          THE COURT:  And it could be used against you not only
19  in this civil contempt proceeding but also in a criminal
20  contempt proceeding.
21          MR. HUNT:  Yes, I understand.
22          THE COURT:  All right.  What is it that you want to
23  say or knowing that, do you wish to speak?
24          MR. HUNT:  Yes.
25          THE COURT:  All right.  Then what is it that you want

1   to say?

2   MR. HUNT: The issue arose over a protective order
3   that was issued in March of -- March 24th, 2016. That order
4   addressed defendants, persons employed by the attorneys of
5   record, and persons the defense counsel deems necessary for
6   further legitimate purposes. So those were the three objects
7   the people directed -- that this protective order was directed
8   at. I am not one of those three.

9   The Court agreed to that later on with a supplemental
10  motion where they amended the protective order to be more
11  inclusive and wrap me within its bounds. So the question of
12  jurisdiction arose on that first issue.

13  I'm a reporter. I've been press for 24 years. I'm a
14  journalist. I was writing articles and they wanted me to stop
15  disseminating information, which I wasn't subject to the order
16  that limited that dissemination. And it stands for like the
17  *United States v. New York Times Company* in 1973. Prior
18  restraint is what they're trying to issue.

19  Now, when the -- I did not appear on March 10th, which
20  was the date that I was supposed to appear for the show of
21  cause. I and other people were watching Pacer. She was going
22  to take the -- it wasn't a motion, it was a status report
23  requesting that she issue the warrant under consideration. If
24  the warrant had been issued then, I would have been -- made
25  arrangements to go to Oregon because at this point I've stepped

1  away from and can look back down upon the jurisdictional issue
2  that's at question now.
3  　　　　　If you allow me to, on my own recognizance now, I will
4  still be in that position.  However, I didn't know the issuance
5  of the warrant -- it was not registered on paper, and I was not
6  aware of it until yesterday.  But I had every intention, when
7  the structure changed where I was outside of that initial issue
8  to take it on, that I intended to take it on, and that's where
9  we are today.
10 　　　　　THE COURT:  There really was no change in structure.
11 You were ordered by the District Judge to do something very
12 specific.  You made a deliberate decision not to appear.
13 　　　　　MR. HUNT:  That was the initial structure, the one
14 where the order did not apply to me --
15 　　　　　THE COURT:  Well, when you found out --
16 　　　　　MR. HUNT:  -- and that was the issue.
17 　　　　　THE COURT:  -- that the Judge was serious by issuing
18 the arrest warrant, that's the only thing that changed.  But
19 you were ordered to do something that you didn't do that you
20 were ordered to do.
21 　　　　　MR. HUNT:  No.  Something has changed now because now
22 I'm outside of that structure, as my attorney has said.  I am
23 more than willing.  I would have gone on March 11th, had I been
24 aware that she had issued a warrant and changed that
25 relationship from one within this case to one outside of this

1  case where I can challenge the issues that I have question with
2  in that case.
3              THE COURT:  All right.  Anything further from you,
4  Mr. Beevers?
5              MR. BEEVERS:  Just that he has -- I think that there's
6  no evidence -- there's nothing to suggest that he wouldn't
7  honor an order of this Court.  He's always said that it should
8  be this Court that issued the injunction that deals with his
9  underlying issues because he lives here, and that's --
10             THE COURT:  Mr. Beevers, I considered whether the
11 comment to the FBI agent who served the order was just some
12 loose talk from the defendant in an off-the-cuff reaction to
13 having been served, but I've also read the excerpts from the
14 radio talk show that the defendant was on where he had plenty
15 of time to think about this, and he made it clear in that talk
16 show host or in that talk show program that he had no intention
17 of appearing up in Oregon.
18             MR. HUNT:  My intentions are laid out in 13 articles
19 that were written in response to what the Court has filed, each
20 one addressing Roviero (phonetic) or addressing United States.
21 I don't -- he covered a little bit of a radio show that lasted
22 an hour or two hours in the transcript.
23             The issue at hand, he avoided to -- to grab those
24 little elements that had the appearance of being other than
25 they were.  And another example is in trying to get aiding and

1  abetting as a factor in this, they took a statement by Dwayne
2  Nemer (phonetic), one of the defendants in the Bundy trials.
3  They alleged that that statement that he said "Gary Hunt has
4  been in contact with all our attorneys" was made in response to
5  a question: Who is Gary Hunt? However, the question, and it's
6  in one of the affidavits, was asked 14 minutes after the
7  question was answered. But then subsequently, in my last
8  article, Dwayne Emmer, when the trial was over, was finally
9  released by his attorney to say that Gary Hunt -- that I was in
10 error on that. I thought that Gary Hunt had been in touch with
11 the attorneys, he has not. But I couldn't say that until the
12 trial was over. So there was restraint on that side. I did
13 not aid and abet anybody.
14     You know, the elements of the jurisdictional issue
15 have not been met. I've rebutted every one of them in my
16 articles, but they're not a part of the record, except they
17 refer to both series -- the freedom-of-the-press series and the
18 Burns Chronicles series. My intention from the beginning was
19 to challenge some issues on this in the right jurisdiction.
20     Now, if I had gone in there on her show cause, I would
21 have been subject to Judge Anna Brown. Under the circumstances
22 now, I have two -- they have two alternatives. I can get an
23 alternate attorney, or I can get a jury on the contempt
24 charges. So now I'm in a different position than I would have
25 been had I gone up there on a show cause order.

1        THE COURT:  All right.  Mr. Coppola?

2        MR. COPPOLA:  Your Honor, it's submitted from the
3   government.

4        THE COURT:  All right.  I am going to order the
5   defendant detained without prejudice to a detention hearing
6   before the District Judge.  Actually, when the defendant
7   arrives in Oregon, he'll be put before the District Judge, and
8   that will be his opportunity to convince the District Judge
9   that he shouldn't be further incarcerated as a matter of civil
10  contempt to compel his compliance with the earlier orders.

11       The defendant's ordered detained and transported as
12  soon as practical to the District of Oregon.

13       Is there anything further for this afternoon?

14       MR. COPPOLA:  No, your Honor.

15       MR. BEEVERS:  Just, your Honor, I believe there are
16  different -- there are different time requirements as to this
17  kind of case, a contempt case versus a removal.  I know
18  removals can take months in some cases, but I would ask that
19  the Court, in a contempt case, needs to move as quickly as
20  possible.

21       THE COURT:  Yes.  I am going to ask the marshals to
22  try to expedite his transportation to Oregon.

23       MR. BEEVERS:  That's what -- and it's not that far,
24  so --

25       THE COURT:  Yes.

1      MR. BEEVERS:  Thank you.

2      THE COURT:  All right.  And then, as I'm sure you've

3  explained to Mr. Hunt and Mr. Beevers, in the matters of civil

4  contempt, the -- ultimately it's the contemnor who holds the

5  keys to the jail.  All he has to do is comply with the order.

6      MR. BEEVERS:  Right.

7      THE COURT:  All right.  Thank you.

8    (Concluded at 2:22 p.m.)

9

10                    C E R T I F I C A T E

11

12    I, court-approved transcriber, certify that the foregoing

13  is a correct transcript from the official electronic recording

14  of the proceedings in the above-entitled matter.

15

16  */s/ JENNIFER L. COULTHARD*              April 14, 2017

17                                                DATE

18
   JENNIFER L. COULTHARD, RMR, CRR
19  Official Court Reporter

20

21

22

23

24

25